Filed 3/4/21  P. v. Lloyd CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>COREY DWIGHT LLOYD,<br><br>    Defendant and Appellant. | B299456<br><br>(Los Angeles County<br>Super. Ct. No. TA019920) |

APPEAL from an order of the Superior Court of Los Angeles County, Connie R. Quinones, Judge.  Affirmed.

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Daniel C. Chang and William N. Frank, Deputy Attorneys General, for Plaintiff and Respondent.

In June 1993, a jury convicted defendant and appellant Corey Dwight Lloyd, along with two accomplices, of kidnapping, forcible rape, and murder, with true findings on the special circumstance allegations that the murder was committed in the course of rape and kidnapping. The jury's verdicts did not definitively establish which of the defendants was the actual killer. In 2019, Lloyd petitioned for vacation of his murder conviction and resentencing pursuant to Penal Code section 1170.95.[1] The trial court summarily denied the petition, concluding that, in light of the jury's special circumstance finding and the facts of the case, Lloyd was a major participant in the underlying felony who acted with reckless indifference to human life, and was thus ineligible for relief. Lloyd timely appeals the denial of his petition. We affirm the court's order.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The murder and Lloyd's conviction*[2]

On May 3, 1992, 16-year-old M.H. spent the afternoon with friends at the Mendoza residence on West 98th Street in Los Angeles. In the early evening, she went to the nearby residence of codefendant Ramon Lopez. Lloyd, Lopez, and codefendant Joel Cortez, as well as other persons, were present. The group began playing "spin the bottle." As part of the game, M.H. removed her pants, but refused to remove her pantyhose or underwear. When

---

[1]    All further undesignated statutory references are to the Penal Code.

[2]    We derive the factual and procedural background in part from this Division's prior opinion in this matter, of which we have taken judicial notice at the People's request. (Evid. Code, §§ 452, subd. (d), 459.)

Cortez and another person went into a bedroom, M.H. went to the bedroom door to see what was going on inside. Cortez—armed with a .380 firearm—pulled her into the room; Lloyd and Lopez followed. All three defendants then "socked" M.H. in the face repeatedly, and tried to remove her underwear. Cortez hit her in the mouth with his gun. Screaming, M.H. begged the men not to rape her. Cortez retrieved a radio from the living room, returned to the bedroom, and played music loudly.

Ten to 15 minutes later, Lloyd and Lopez emerged from the bedroom. Lopez armed himself with a .nine-millimeter firearm. Lloyd retrieved a .45 handgun from under a sofa. Both men loaded the guns. Cortez then exited the bedroom with M.H., who was walking with her legs apart. She was bleeding and missing a tooth, but she was clothed. Cortez socked her in the head and told her to walk straight. All three defendants left with M.H. They told her they would drop her off at a bus stop and she should say she was raped by "some 'Black guys.'"

The defendants walked M.H. into a nearby alley. She repeatedly insisted she would not tell police what had happened. Within minutes, multiple gunshots were fired. Seven hit M.H., killing her. One shot was fired into her head from close range; three others were fired into her chest. The defendants left M.H. lying in the alley. Her last words were, "I want my mom."

All three defendants returned to Lopez's house. They formulated a plan to falsely claim that M.H. had tried to shoot them, so they beat her up and shot her.

Police officers recovered eleven nine-millimeter cartridges from the murder scene. All were fired from the same gun.

Lloyd eventually admitted to a detective that he had sex with M.H., and that the story about her attempting to shoot the

defendants was a lie.  He stated that she " 'was killed because she would have told the police how she got fucked up.' "  She had pleaded with him to help her, and " 'begged [him] not to let her be killed.' "  Lloyd's ex-girlfriend testified that Lloyd told her he killed M.H.

Lloyd, Cortez, and Lopez were tried together.  The court instructed the jury on felony murder and direct aiding and abetting, but not on the natural and probable consequences doctrine.  The jury convicted Lloyd and the other two defendants of first degree murder (§ 187), forcible rape (§ 261, subd. (a)(2)), and kidnapping (§ 207, subd. (a)).  It found true special circumstance allegations that all three defendants committed the murder in the commission of rape and kidnapping.  (§ 190.2, subd. (a)(17).)  The jury also found that during commission of the murder and kidnapping, Lloyd personally used a firearm (§§ 12022.5, subd. (a)) and a principal was armed with a firearm (§ 12022, subd. (a)(1)).  It found the same firearm enhancements true as to Cortez and Lopez.  The trial court sentenced Lloyd to life in prison without the possibility of parole, plus five years for personal use of a firearm.

In 1996, this court affirmed the judgments against Lloyd and his codefendants.  (*People v. Lloyd et al.* (April 25, 1996, B080005) [nonpub. opn.].)

2. *Section 1170.95 petition*

In March 2019, after passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), Lloyd filed a petition for vacation of his murder conviction and resentencing.  Using a preprinted form, he checked boxes stating that he had been convicted of murder pursuant to the felony murder rule or the natural and probable consequences doctrine; he was not the

4

actual killer; he did not, with the intent to kill, aid and abet the actual killer; he was not a major participant in the felony or did not act with reckless indifference to human life; and he could not now be convicted of murder in light of changes to sections 188 and 189 effectuated by Senate Bill 1437. He also checked a box requesting that counsel be appointed for him.

On May 29, 2019, the trial court summarily denied the petition. Lloyd was not present, and was not represented by counsel. The court noted that the jury had found the special circumstance allegations true. It recited the facts of the case as described in this Division's 1996 opinion, and concluded that Lloyd "would still be found guilty with a valid theory of first degree murder" under section 189, subdivision (e)(3), that is, he was a major participant in the underlying felony and acted with reckless indifference to human life.

Lloyd filed a timely notice of appeal.

## DISCUSSION

Lloyd contends that the trial court erred by summarily dismissing his petition based on the jury's special circumstance finding, without appointing counsel for him. We disagree.

1. *Applicable legal principles*

    a. *Senate Bill 1437*

Senate Bill 1437, which took effect on January 1, 2019, limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure that a person's sentence is commensurate with his or her individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843; *People v. Verdugo* (2020) 44 Cal.App.5th 320, 323 (*Verdugo*), review granted March 18, 2020, S260493; *People v. Munoz* (2019) 39

5

Cal.App.5th 738, 749–750, 763, review granted Nov. 26, 2019, S258234.)

Prior to Senate Bill 1437's enactment, under the felony murder rule "a defendant who intended to commit a specified felony could be convicted of murder for a killing during the felony, or attempted felony, without further examination of his or her mental state." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 247–248; *People v. Powell* (2018) 5 Cal.5th 921, 942.) " ' "The felony-murder rule impute[d] the requisite malice for a murder conviction to those who commit[ted] a homicide during the perpetration of a felony inherently dangerous to human life." ' " (*Lamoureux*, at p. 248.)

Senate Bill 1437 amended the felony-murder rule by adding section 189, subdivision (e), which provides that a participant in the perpetration of qualifying felonies is liable for felony murder only if the person:  (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) the person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in section 190.2, subdivision (d).  (*People v. Gentile, supra,* 10 Cal.5th at p. 842.)

b.  *Section 1170.95's petitioning procedure*

Senate Bill 1437 also added section 1170.95, which created a procedure whereby persons convicted of murder under a now-invalid felony-murder or natural and probable consequences theory may petition for vacation of their convictions and resentencing.  A defendant is eligible for relief under section 1170.95 if he meets three conditions: (1) he must have been charged with murder under a theory of felony murder or murder under the natural and probable consequences doctrine, (2) must

6

have been convicted of first or second degree murder, and (3) could no longer be convicted of first or second degree murder due to changes to sections 188 and 189 effectuated by Senate Bill 1437.  (§ 1170.95, subd. (a).)

Evaluation of a section 1170.95 petition requires a multi-step process: an initial review to determine the petition's facial sufficiency; a prebriefing, " 'first prima facie review' " to preliminarily determine whether the petitioner is statutorily eligible for relief as a matter of law; and a second, postbriefing prima facie review to determine whether the petitioner has made a prima facie case that he or she is entitled to relief.  (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 897 (*Tarkington*), review granted Aug. 12, 2020, S263219; *Verdugo, supra*, 44 Cal.App.5th at pp. 327–330, rev.gr.)

When conducting the first prima facie review, the court must determine, based upon its review of readily ascertainable information in the record of conviction and the court file, whether the petitioner is statutorily eligible for relief as a matter of law, i.e., whether he or she was convicted of a qualifying crime, based on a charging document that permitted the prosecution to proceed under the natural and probable consequences doctrine or a felony-murder theory.  (*Tarkington, supra*, 49 Cal.App.5th at pp. at pp. 897–898, rev. gr.; *Verdugo, supra*, 44 Cal.App.5th at pp. 329–330, rev.gr.)  If it is clear from the record of conviction that the petitioner cannot establish eligibility as a matter of law, the trial court may summarily deny the petition without appointing counsel.  (*Tarkington*, at pp. 898, 901–902; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1178 (*Torres*), review granted June 24, 2020, S262011; *Verdugo*, at p. 332; *People v. Lewis*

7

(2020) 43 Cal.App.5th 1128, 1139–1140, review granted Mar. 18, 2020, S260598 (*Lewis*).)

If, however, the petitioner's ineligibility is not established as a matter of law, the court must appoint counsel and permit briefing to determine whether the petitioner has made a prima facie showing he or she is entitled to relief.  (*Verdugo, supra,* 44 Cal.App.5th at p. 330, rev. gr.; *Tarkington, supra,* 49 Cal.App.5th at p. 898, rev. gr.)  If the petitioner makes such a showing, the court must issue an order to show cause and conduct a hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts.  (§ 1170.95, subds. (c), (d); *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1165–1166.)  At such a hearing, the prosecution has the burden to prove, beyond a reasonable doubt, that the defendant is ineligible for resentencing.  (§ 1170.95, subd. (d)(3).)

2.  *Application here*

Lloyd challenges the trial court's ruling on several grounds. First, he argues that the trial court erred by denying his petition without appointing counsel.  In his view, counsel must be appointed as soon as a defendant files a section 1170.95 petition with the correct boxes checked.  Second, he avers that by examining the record of conviction prior to the appointment of counsel, the trial court engaged in an improper ex parte "investigation."  And third, he contends that the court erred by finding him ineligible based exclusively on the jury's special circumstance findings, which predated our Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

The People counter that the trial court properly reviewed the record of conviction, and was not required to appoint counsel

8

because Lloyd was ineligible as a matter of law, given the jury's special circumstance findings.  Further, they argue, any error was harmless because the record shows Lloyd was a major participant in the rape and kidnapping who acted with reckless indifference to human life.

a.  *The trial court did not err by reviewing the record of conviction or by declining to appoint counsel*

We quickly dispose of Lloyd's contention that the trial court improperly reviewed the record of conviction.  Contrary to Lloyd's argument, numerous Courts of Appeal, including this one, have repeatedly rejected the argument that a trial court is limited to consideration of the allegations in the petition when determining whether the petitioner has made a prima facie showing of eligibility.  A court may consider readily ascertainable information in the record of conviction and the court file, including a prior Court of Appeal opinion.  (See *People v. Palacios* (2020) 58 Cal.App.5th 845, 855–856, review granted Feb. 24, 2021, S266701; *People v. Gomez* (2020) 52 Cal.App.5th 1, 15–16 (*Gomez*), review granted Oct. 14, 2020, S264033; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review granted Sept. 23, 2020, S263939; *Tarkington, supra,* 49 Cal.App.5th at p. 898, rev. gr.; *People v. Lee* (2020) 49 Cal.App.5th 254, 262–263, review granted July 15, 2020, S262459; *People v. Law* (2020) 48 Cal.App.5th 811, 821, review granted July 8, 2020, S262490; *Torres, supra,* 46 Cal.App.5th at pp. 1173, 1178, rev. gr.; *Verdugo, supra,* 44 Cal.App.5th at pp. 329–330, rev. gr.; *Lewis, supra,* 43 Cal.App.5th at pp. 1137–1138 & fn. 7, rev.gr.)

We also reject the notion that a court must appoint counsel immediately upon the defendant's filing of a form petition in which the correct boxes are checked.  We and other courts have

held that a trial court may summarily deny a petition without appointing counsel if the record shows the defendant is ineligible as a matter of law.  (See *Tarkington, supra,* 49 Cal.App.5th at pp. 901–902, rev. gr.; *Verdugo, supra,* 44 Cal.App.5th at p. 332, rev. gr.; *Torres, supra,* 46 Cal.App.5th at p. 1178, rev. gr.; *People v. Lewis, supra,* 43 Cal.App.5th at pp. 1139–1140, rev. gr.; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted March 18, 2020, S260410; but see *People v. Cooper* (2020) 54 Cal.App.5th 106, 109, review granted Nov. 10, 2020, S264684.)  Thus, if the trial court here was correct that the special circumstance findings precluded relief as a matter of law, it was not required to appoint counsel before denying the petition.[3]

> b.  *The trial court correctly denied the petition because Lloyd is ineligible for relief as a matter of law*

Lloyd's appeal hinges on the effect of the jury's true findings on the special circumstance allegations.

To be eligible for resentencing, Lloyd was required to show that he "could not be convicted of first or second degree murder because of changes to Section 188 or 189" made by Senate Bill 1437.  (§ 1170.95, subd. (a)(3).)  Under section 189, as amended, a defendant can be convicted of felony murder if he was the actual killer; acted as a direct aider and abettor with the intent to kill;

---

[3]    Our California Supreme court is currently considering whether a trial court may consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under section 1170.95, and when the right to counsel arises under section 1170.95, subdivision (c). (*People v. Lewis,* S260598.)  Pending further guidance from our high court, however, Lloyd's arguments give us no reason to deviate from our prior holdings on these points.

or was a major participant in the underlying felony and acted with reckless indifference to human life.  (§ 189, subd. (e); *People v. Murillo* (2020) 54 Cal.App.5th 160, 167 (*Murillo*), review granted Nov. 18, 2020, S264978.)

Lloyd's jury found true two special circumstances: that the murder was committed while he was engaged in the crimes of rape and kidnapping.  (§ 190.2, subd. (a)(17).)  It was instructed that if Lloyd was not the actual killer (or if it could not determine whether he was), it could not find the special circumstances true unless it was satisfied beyond a reasonable doubt that he, with the intent to kill, directly aided and abetted the murder; or, with reckless indifference to human life and as a major participant, aided and abetted the underlying offenses of rape or kidnapping.

Thus, the jury's findings on the special circumstance allegations make Lloyd ineligible for resentencing as a matter of law.  "The requirements for the felony-murder special circumstance did not change as a part of Senate Bill No. 1437, and are identical to the new requirements for felony murder following the enactment of Senate Bill No. 1437.  In both instances, the defendant must have either actually killed the victim [citations]; acted with the intent to kill in aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or assisting in the killing [citations]; or been a major participant in the underlying felony and acted with reckless indifference to human life [citations].  By finding a special circumstance allegation true, the jury makes precisely the same finding it must make in order to convict a defendant of felony murder under the new law.  Because a defendant with a felony-murder special circumstance could still be convicted of murder, he is ineligible as a matter of law to have his murder conviction vacated."  (*People*

11

*v. Galvan* (2020) 52 Cal.App.5th 1134, 1140–1141 (*Galvan*),
review granted Oct. 14, 2020, S264284; see *People v. Jones* (2020)
56 Cal.App.5th 474, 482, review granted Jan. 27, 2021, S265854
(*Jones*); *Gomez, supra,* 52 Cal.App.5th at p. 15, rev. gr.; *Murillo,
supra,* 54 Cal.App.5th at p. 167, rev. gr.; *People v. Allison* (2020)
55 Cal.App.5th 449, 457 (*Allison*); *People v. Nunez* (2020) 57
Cal.App.5th 78, 91, review granted Jan. 13, 2021, S265918
(*Nunez*).)

Lloyd argues that the jury's special circumstance findings
are not preclusive in his case, because they predated our
Supreme Court's decisions in *Banks* and *Clark*. "*Banks* and
*Clark* 'clarified "what it means for an aiding and abetting
defendant to be a 'major participant' in a crime who acted with a
'reckless indifference to human life.' " ' [Citation.] *Banks*
identified certain factors to consider in determining whether a
defendant was a major participant; *Clark* identified factors to
guide the determination of whether the defendant acted with
reckless indifference to human life." (*Gomez, supra,* 52
Cal.App.5th at p. 13, fn. 5, rev. gr.)

The appellate courts are split on the question of whether a
pre-*Banks* and *Clark* special circumstance finding makes a
petitioner ineligible for section 1170.95 relief as a matter of law.
(See *Jones, supra,* 56 Cal.App.5th at pp. 478–479, rev. gr.
[collecting cases].) Our colleagues in Divisions Five and Seven
have concluded that such a special circumstance does not, by
itself, render a petitioner ineligible for relief. (*Torres, supra,* 46
Cal.App.5th at p. 1178, rev. gr.; *People v. Harris* (Feb. 16, 2021,
B300410) __ Cal.App.5th __ [2021 Cal.App.Lexis 127, *21].)
*Torres* reasoned that *Banks* and *Clark* "construed section 190.2,
subdivision (d) in a significantly different, and narrower manner

12

than courts had previously construed the statute." (*Id.* at p. 1179.) "Accordingly, in determining if [petitioner] could be convicted today of first degree murder, we cannot simply defer to the jury's pre-*Banks* and *Clark* factual findings that [petitioner] was a major participant who acted with reckless indifference to human life as those terms were interpreted at the time." (*Ibid.*) "No court has affirmed the special circumstances findings at issue post-*Banks* and *Clark*. There is therefore a possibility that [the petitioner] was punished for conduct that is not prohibited by section 190.2 as currently understood, in violation of [the petitioner's] constitutional right to due process." (*Id.* at p. 1180, fn. omitted; *People v. Smith* (2020) 49 Cal.App.5th 85, 93, review granted July 22, 2020, S262835; *People v. York* (2020) 54 Cal.App.5th 250, 258, review granted Nov. 18, 2020, S264954 [pre-*Banks/Clark* special circumstance finding "cannot preclude eligibility for relief under . . . section 1170.95 *as a matter of law*, because the factual issues that the jury was asked to resolve" in such a case "are not the same factual issues our Supreme Court has since identified as controlling."]; *People v. Harris*, *supra*, __ Cal.App.5 at p. __ [2021 Cal.App.Lexis at p. *24 [pre-*Banks/Clark* finding, without more, does not preclude relief under section 1170.95].)

As noted, other courts hold that a pre-*Banks* and *Clark* special circumstance finding bars section 1170.95 relief as a matter of law. They reason that section 1170.95 was not meant to be an avenue for a collateral attack on the sufficiency of the evidence to support a special circumstance finding (see, e.g., *Allison, supra,* 55 Cal.App.5th at pp. 453, 461), and a defendant seeking to challenge the sufficiency of the evidence to prove a pre-*Banks* and *Clark* major participant or reckless indifference

13

finding must do so via a petition for writ of habeas corpus. (*Gomez, supra,* 52 Cal.App.5th at pp. 16–17, rev. gr.; *Galvan, supra,* 52 Cal.App.5th at p. 1137, rev. gr.; *Jones, supra,* 56 Cal.App.5th at p. 483, rev.gr.; *Nunez, supra,* 57 Cal.App.5th at p. 96, rev.gr.)

In support of this view, some cases point out that *Banks* and *Clark* did not state a new rule of law, but merely clarified the already-existing meaning of "major participant" and "reckless indifference," terms that do not have specialized definitions and are interpreted as used in common parlance. (*Jones, supra,* 56 Cal.App.5th at pp. 482, 484, rev.gr.; *Nunez, supra,* 57 Cal.App.5th at p. 92, rev.gr.; *Allison, supra,* 55 Cal.App.5th at pp. 458–459.) While optional language was added to the pattern jury instructions after *Banks* and *Clark,* "no mandatory language or material changes were made to the CALCRIM special circumstances instructions," and there is no requirement that juries be instructed on the *Banks/Clark* clarifications. (*Nunez,* at pp. 92–93; *Jones,* at p. 484; *Allison,* at pp. 458–459.) Thus, the argument that a pre-*Banks/Clark* special circumstance finding must be presumed invalid exaggerates the impact of *Banks* and *Clark.* (See *Allison,* at p. 458; *Jones,* at p. 484.) There is "no basis to conclude as a general matter that a pre-*Banks* and *Clark* jury was instructed differently than a post-*Banks* and *Clark* jury, or resolved different factual issues, answered different questions, or applied different standards." (*Nunez,* at p. 94).

Additionally, this line of authority reasons that the *Torres/Smith/York* approach is inconsistent with the plain language of section 1170.95, because a defendant claiming ineligibility based on *Banks* and *Clark* does not meet the statutory requirement that he or she cannot be convicted *because*

14

*of* changes to sections 188 or 189 made by Senate Bill 1437. (*Jones, supra,* 56 Cal.App.5th at p. 484, rev.gr.)  "In order to be eligible for resentencing, a defendant must show that he or she 'could not be convicted of first or second degree murder because of changes to Section[s] 188 or 189 made effective' as part of Senate Bill No. 1437.  (§ 1170.95, subd. (a)(3).)  [¶] . . . Although [petitioner] is asserting that he could not now be convicted of murder, the alleged inability to obtain such a conviction is not 'because of changes' made by Senate Bill No. 1437, but because of the clarification of the requirements for the special circumstance finding in *Banks* and *Clark.*  Nothing about those requirements changed as a result of Senate Bill No. 1437.  Just as was the case before that law went into effect, the special circumstance applies to defendants who were major participants in an underlying felony and acted with reckless indifference to human life."  (*Galvan, supra,* 52 Cal.App.5th at p. 1142, rev. gr.; *Murillo, supra,* 54 Cal.App.5th at p. 168, rev. gr.; *Allison, supra,* 55 Cal.App.5th at p. 460; *Nunez, supra,* 57 Cal.App.5th at pp. 94–95, rev.gr.)

Further, in concluding that the proper vehicle to challenge a pre-*Banks* and *Clark* special circumstance finding is a petition for writ of habeas corpus, courts point to the different burdens involved in a habeas petition and a section 1170.95 petition.  A defendant challenging a pre-*Banks/Clark* special circumstance finding on direct appeal or by means of a writ of habeas corpus must show that the record contains insufficient evidence to prove he or she acted as a major participant or with reckless indifference.  (*Jones, supra,* 56 Cal.App.5th at p. 485, rev.gr.; *Galvan, supra,* 52 Cal.App.5th at pp. 1142–1143, rev. gr.; *Gomez, supra,* 52 Cal.App.5th at p. 17, rev. gr.)  "By contrast, a petitioner

15

who demonstrates a prima facie case for relief under section 1170.95 has shifted the burden to the People to prove beyond a reasonable doubt that they are ineligible for resentencing (that is, they still *could be* convicted of murder despite the change to the felony-murder rule in § 189.) [Citation.] . . . . [T]he *Torres*/*Smith*/*York* line of cases would read into section 1170.95 a new procedure allowing petitioners to ignore a special circumstance finding—no matter how well supported in the record—as well as the recognized method of challenging it. Such petitioners would be allowed to relitigate a prior jury finding at an evidentiary hearing where the prosecution bears the burden of proving the truth of the finding, beyond a reasonable doubt, a second time." (*Jones,* at p. 485.) Allowing petitioners to challenge a special circumstance finding via a section 1170.95 petition would give them an advantage over similarly situated defendants, based on the date of their convictions. (*Galvan, supra,* 52 Cal.App.5th at pp. 1142–1143, rev. gr.; see *Nunez, supra,* 57 Cal.App.5th at pp. 96–97, rev.gr.)

Such a procedure is inconsistent with the Legislature's intent. "The Legislature made plain that its purpose in enacting section 1170.95 was to give defendants the benefit of the amendments to sections 188 and 189 in the absence of a factual basis for a murder conviction in light of the statutory revisions. But there is no indication in the statute's text or history of any legislative intent to permit defendants to challenge their murder convictions by attacking prior findings of fact." (*People v. Nunez, supra,* 57 Cal.App.5th at p. 95, rev.gr.) "Nothing in the language of section 1170.95 suggests it was intended to provide redress for allegedly erroneous prior factfinding. In particular, subdivision (a)(3) of section 1170.95 says nothing about erroneous prior

16

findings or the possibility of proving contrary facts if given a second chance.  Rather, it requires that the petitioner could not be convicted of murder *because of the changes to sections 188 and 189*, not *because a prior fact finder got the facts wrong*.  The purpose of section 1170.95 is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved." (*Allison, supra*, 55 Cal.App.5th at p. 461.)

While we acknowledge that both of the foregoing lines of authority are not without force, we respectfully disagree with our colleagues in Divisions Five and Seven and conclude that the cases holding that a special circumstance finding precludes relief as a matter of law are more persuasive.  Accordingly, we conclude that the trial court correctly denied Lloyd's section 1170.95 petition because he is ineligible for relief as a matter of law.  In light of our conclusion, we do not reach the People's argument that we may determine Lloyd is ineligible as a matter of law based on evidence in the record showing he acted as a major participant with reckless indifference to human life.

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

I concur:

EGERTON, J.

LAVIN, J., Dissenting:

For the reasons laid out in my dissent in *People v. Tarkington* (2020) 49 Cal.App.5th 892, 917, review granted August 12, 2020, S263219, and the holding and analysis in *People v. Torres* (2020) 46 Cal.App.5th 1168, review granted June 24, 2020, S262011 and *People v. Harris* (Feb. 16, 2021, B300410) __ Cal.App.5th __ [2021 Cal.App.Lexis 127, *21], I would reverse the order and direct the trial court to conduct further proceedings in accordance with Penal Code section 1170.95.

LAVIN, J.

1